**THE GIMINO LAW OFFICE, APC**
Peter J Gimino III, Esq. (SBN 198926)
pgimino@giminolaw.com
1 Park Plaza, Suite 600
Irvine, CA 92614
Telephone: (949) 225-4446
Facsimile: (949) 225-4447

**WOODROW & PELUSO, LLC**
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809
*pro hac vice application to be filed

Attorneys for Plaintiff, Eva Hulsey, and the Putative Classes

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

|  |  |
|---|---|
| **EVA HULSEY**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**PEDDLE, LLC**, a Texas limited liability company,<br><br>*Defendant*. | Case No.: 2:17-cv-3843<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Eva Hulsey ("Hulsey" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Peddle, LLC ("Peddle" or "Defendant") to stop Defendant's practice of sending unsolicited text messages to cellular telephones without the recipient's prior express written consent and to obtain redress, including injunctive relief, for all persons injured by Defendant's conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.       Defendant Peddle, LLC, is a company that purchases automobiles that are no longer properly functioning.  In other words, Defendant purchases "junk cars."[1]

2.       Unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote its business and generate leads for its services, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the sending of repeated, unsolicited text messages to consumers' cellular telephones—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

---

[1] https://www.peddle.com/about-us

## A. **Bulk SMS Marketing**

3.      In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk messages cheaply.

4.      Bulk text messaging, or SMS marketing, has emerged as a new and direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

5.      When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

## B. **Defendant Transmits Text Messages to Consumers Who Do Not Want Them**

6.      On information and belief, Defendant sends text messages to consumer's cellular telephones in an attempt to solicit their business.

---

CLASS ACTION COMPLAINT                                     USDC Case No. 2:17-cv-3843

7.      In sending these text messages, Defendant took no steps to acquire the prior express consent of Plaintiff or the Class Members who received the unsolicited text messages.

8.      Defendant made, or had made on its behalf, the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

9.      In sending the text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

10.     Defendant was and is aware that these above described text messages were and are being made without the prior express written consent of the text message recipients.

11.     By sending the text messages at issue in this Complaint, Defendant caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value

realized for the monies consumers paid to their carriers for the receipt of such text messages, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

12.    In response to Defendant's unlawful conduct, Plaintiff filed this action seeking an injunction requiring Defendant to cease all unsolicited text messaging activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

13.    Plaintiff Eva Hulsey is a natural person and resident of Harbor City, California.

14.    Defendant Peddle, LLC is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business located at 111 W. 6th Street, Suite 300, Austin, Texas 78701.[2] Defendant conducts business throughout this District, the State of California, and the United States.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because Defendant conducts a significant amount of business in this District, solicits consumers in this District,

---

[2] https://mycpa.cpa.state.tx.us/coa/coaSearch.do

sent and continues to send unsolicited text messages in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business within this District and markets to this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

17.     Defendant is a company that purchases junk cars from consumers. Consumers have the ability to contact Defendant online to obtain a quote regarding the price of getting their junk cars removed by Defendant.

18.     In recent years, online companies such as Defendant have turned to unsolicited telemarketing as a way to increase their customer base. Widespread telemarketing is a primary method by which Defendant recruits new customers.

19.     Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (noting that text messaging is a

form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

20.    As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

21.    Yet, in violation of this rule, Defendant fails to obtain any prior express written consent to send these text messages to cellular telephone numbers.

22.    At all times material to this Complaint, Defendant was and is fully aware that unsolicited telemarketing text messages are being made to consumers' cellular telephones through its own efforts and its agents.

23.    Defendant knowingly made (and continues to make) unsolicited telemarketing calls without the prior express written consent of the call recipients. In so doing, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Classes, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF EVA HULSEY

24.    On February 3, 2016, Plaintiff registered her cellular telephone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls on her cellular telephone.

---

25.     On January 22, 2017, at 7:07 p.m., and more than 31 days after she registered her number on the National Do Not Call Registry, Plaintiff received the first unsolicited text message from Peddle.[3]  The message read:

> Good evening! I'm the Peddle bot that will help you get an offer on your '94 Corolla.  1. We can pick-up your car and pay up to $60. 2. You can also list it for sale and we will try to get you up to $550.  To review your offers or learn more visit http://goo.gl/iLYp2H.

26.     One minute later, at 7:08 p.m., Plaintiff responded for the purpose of ascertaining Peddle's identity and getting the text messages to stop:

> Who r u where did u get my c

27.     On January 23, 2017 at 10:40 a.m. Plaintiff received another text message from Peddle.  The message read:

> Hi! I am a bot from Peddle that will help you get an offer on your car.  Let's get started! What is the year of your car? For instance, 2001.

28.     The link in Peddle's first text message to Plaintiff, http://goo.gl/iLYp2H, directs the consumer to https://www.peddle.com/sell-car#3.

29.     The following is a reproduced screenshot of https://www.peddle.com/sell-car#3:

---

[3] Upon information and good-faith belief, Peddle contends it obtained Plaintiff's contact information from http://junkcarzone.com. Said website contains no TCPA consent language.



30.    Plaintiff has never provided her prior express written consent to Defendant to send text messages to her.

31.    By sending unauthorized text message calls as alleged herein, Defendant has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the calls disturbed Plaintiff's use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone. In the present case, a consumer could be subjected to many unsolicited text messages as the Defendant ignores the requirement of prior express written consent.

32.    In order to redress these injuries, Plaintiff, on behalf of herself and the Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited voice and text calls to cellular telephones.

---

CLASS ACTION COMPLAINT                                      USDC Case No. 2:17-cv-3843

33.     On behalf of the Classes, Plaintiff seeks an injunction requiring Defendant to cease all wireless telemarketing activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

34.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following two Classes:

**Text Message No Consent Class:** All persons in the United States from four years prior to the filing of the instant action who (1) Defendant (or a third person acting on behalf of Defendant) sent text messages, (2) to the person's cellular telephone number, and (3) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to send automated text messages to the Plaintiff.

**DNC No Consent Class**: All persons in the United States who (1) received more than one text message on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to send automated text messages to the Plaintiff.

35.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former

employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

36.    **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant sent autodialed text messages to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's records.

37.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant's conduct constitutes a violation of the TCPA;

(b) whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Classes;

(c) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct;

(d) whether Defendant obtained prior express written consent to contact any class members; and

(e) whether Defendants sent unsolicited text messages to consumers who were registered on the Do Not Call registry.

38. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Classes.

39. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the

members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Text Message No Consent Class)**

40.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

41.     Defendant sent autodialed text messages to cellular telephone numbers belonging to Plaintiff and other members of the Text Message No Consent Class without first obtaining prior express written consent to receive such autodialed text messages.

42.     Defendant sent the autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and

systematic manner. Defendant's autodialer disseminated information *en masse* to Plaintiff and other consumers.

43.    By sending the unsolicited text messages to Plaintiff and the cellular telephones of members of the Text Message No Consent Class without their prior express written consent, and by utilizing an automatic telephone dialing system to make those calls, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

44.    Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Text Message No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

45.    In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Text Message No Consent Class.

## SECOND CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the DNC No Consent Class)**

46.    Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

47.    47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same

entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

48.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

49.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the FCC's July 3, 2003 Report and Order, which in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[4]

---

[4] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

50.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

CLASS ACTION COMPLAINT                          USDC Case No. 2:17-cv-3843

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

51.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff and the DNC No Consent Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

52.     Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy regarding do not call requests and by failing to inform or train its personnel regarding any do not call list.

53.     Defendant made more than one unsolicited telephone call to Plaintiff and other members of the DNC No Consent Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and other

members of the DNC No Consent Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendants do not have a current record of consent to place telemarketing calls to them.

54.    Defendants violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the DNC No Consent Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

55.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the DNC No Consent Class received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC No Consent Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

56.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and the DNC No Consent Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Eva Hulsey, individually and on behalf of the Classes, prays for the following relief:

1.       An order certifying the Classes as defined above, appointing Plaintiff Eva Hulsey as the representative of the Classes, and appointing her counsel as Class Counsel;

2.       An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

3.       An order declaring that Defendant's actions, as set out above, violate the TCPA;

4.       A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

5.       An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

6.       An order requiring Defendant to identify any third-party involved in the autodialed calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

7.       An injunction requiring Defendant to cease all unsolicited autodialed calling activities, and otherwise protecting the interests of the Classes;

---

CLASS ACTION COMPLAINT

USDC Case No. 2:17-cv-3843

8.    An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

9.    An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until they establish and implement policies and procedures for ensuring the third-party's compliance with the TCPA;

10.   An injunction prohibiting Defendant from conducting any future telemarketing activities until they have established an internal Do Not Call List as required by the TCPA;

11.   An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

12.   Such other and further relief that the Court deems reasonable and just.

Respectfully Submitted,

**EVA HULSEY**, individually and on behalf of Classes of similarly situated individuals

|  |  |
|---|---|
|  | THE GIMINO LAW OFFICE, APC |
| Dated: May 22, 2017 | By: ____/s/ Peter J. Gimino, III |
|  | Peter J. Gimino III |
|  |  |
|  | WOODROW & PELUSO, LLC (*pro hac vice admission to be sought*) |
|  | Attorneys for Plaintiff Eva Hulsey and the Putative Classes |

# JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

THE GIMINO LAW OFFICE, APC

Dated: May 22, 2017

By: ____/s/ Peter J. Gimino, III
       Peter J. Gimino III

WOODROW & PELUSO, LLC (*pro hac vice admission to be sought*)

Attorneys for Plaintiff Eva Hulsey and the Putative Classes

---